JENKS, Respondent, vs. HETZEL, Appellant.

*March 7—May 9, 1939.*

For the appellant there was a brief by *I. B. Padway,* attorney, and *David Previant* of counsel, both of Milwaukee, and oral argument by *Mr. Previant*.

*E. D. Helke* of Nekoosa and *A. J. Crowns* of Wisconsin Rapids, for the respondent.

FAIRCHILD, J. The accident occurred on the morning of February 20, 1937, on Highway No. 73, not far from Wisconsin Rapids. The plaintiff drove northwest along this highway toward Wisconsin Rapids and stopped about 9 o'clock at a tavern where he intended to collect money. This tavern was on the west side of the road. A curving driveway with a south and a north connection with the highway furnishes approach to the tavern from the highway. The plaintiff turned to his left into the south entrance and stopped at the tavern. As to what happened thereafter, the only undisputed facts are

that a collision occurred; that the defendant's car, in which he was traveling north toward Wisconsin Rapids, came to rest in a snowbank at the northerly intersection of the north driveway and road; and that the plaintiff's car proceeded across the highway in a northerly direction from the north entrance of the tavern driveway and came to rest with the front wheels over a guardrail on the east side of the highway, approximately sixty feet from the driveway entrance. Both cars were badly damaged and both the plaintiff and the defendant were injured. There is a dispute as to whether the collision occurred in the north entrance of the driveway or while plaintiff was in the highway.

The plaintiff's account of the accident was that he intended to return to his home, and that he was preparing to turn from the driveway south onto Highway No. 73. He stopped his car on the shoulder at the north entrance, facing in a northerly direction, with only his bumper extending over the concrete. Because he saw the defendant's car approaching, he waited with his foot on the brake. The defendant came down the hill sixty or seventy miles per hour and struck the right rear of plaintiff's car. The right front wheel of the defendant's car struck the plaintiff's running board and the left front wheel struck the plaintiff's right rear wheel. The next thing that plaintiff knew was that his car had climbed a guardrail on the opposite side of the highway after crossing the road in a northerly direction.

The defendant testified that he first saw the other car when he was about two hundred feet away from the driveway. The road was slippery. He was traveling about twenty-five miles per hour when he applied his brakes. The plaintiff's car was in the highway with its bumper across the black center line. He sounded his horn, and when he was about sixty feet away the plaintiff's car jumped across the road. The defendant then swerved to the left, struck the right rear of the plaintiff's car, and glanced off to the left into a snowbank.

Most of the damage to the defendant's car was on the right front end. We do not refer to other evidence offered, because of the result reached.

In their special verdict the jury found that the collision was caused by the negligence of the defendant as to lookout, speed, control, failing to yield the right of way, and operating on the wrong side of the highway; and that the plaintiff was not negligent in any respect.

One of the difficulties met in considering this appeal arises because the plaintiff describes the collision of his car with defendant's as occurring in the north driveway of the tavern and west of the line of the highway. Evidently the location of his car just before the impact was not where he thinks it was. The established facts as to the direction in which the defendant's car was traveling and the situation in which each car was found after the collision tend to show that the collision occurred within the boundaries of the highway. He claims to have been standing in the driveway off the concrete, with his car out of gear and motionless. It is inconceivable that the defendant's car, crossing the highway in a northerly or northwesterly direction onto the left shoulder and striking the motionless car of the plaintiff on its right side, as the plaintiff claims, could impart to the motionless car a force which would overcome inertia and drive the car easterly almost at right angles to the direction in which the force was applied, sixty feet across the road and over the guardrail on the east side of the highway.

The defendant urges that the plaintiff's error leaves him without any adequate explanation of how the accident happened because it is evident that it did not occur while he was in the driveway. He raises a question as to the right of a party to have the case submitted to a jury when his own testimony negatives his right of action. The place where a collision occurs may be mistakenly described, and this mistake may properly tend to lessen the value of the plaintiff's testimony, without requiring a dismissal of his complaint. If the

plaintiff's testimony placed the fault upon himself the point would be made and the result would be dictated by the rule relied upon by the defendant, but this case appears to fall into that class of cases in which it is held that where it is evident from the nature of the testimony that the party could have been mistaken as to the facts, it is error to direct a verdict against him if there is other evidence that the facts were different. *Whiteacre v. Boston Elevated R. Co.* (1922) 241 Mass. 163, 134 N. E. 640.

The collision occurred, but the controlling question as to whose negligence was the greater if either's exceeded the other's has not been so answered as to sustain a judgment. The jury found no negligence on the part of the plaintiff and found the defendant negligent as to lookout, speed, control, failing to yield the right of way, and operating his car on the wrong side of the highway. These answers are necessarily affected by the position of plaintiff's car. The questions to which they respond should not be answered without consideration of the further question as to whether the plaintiff, by being on the highway, injected himself into the lane of travel where the defendant had a right to be. The court in charging the jury instructed them as follows:

"Another rule of law is that the operator of a vehicle emerging from an alley or private driveway or garage shall stop such vehicle immediately prior to moving onto the sidewalk or sidewalk area extending across the path of such vehicle, or if there is no sidewalk or sidewalk area, then before crossing the near limits of the roadway."

There was no misstatement of the law in the instructions, but an important and material rule of law was not called to the attention of the jury. They were not told that one emerging from an alley or private driveway must yield the right of way to all vehicles approaching on the highway, sec. 85.18 (9), Stats. While it does not appear that the defendant requested such an instruction, it is considered that because of the confusion in the testimony as to what occurred, and the

lack of reasonable certainty of determining from the answers of the special verdict what view the jury took of the evidence, a new trial should be granted in the interest of justice.

*By the Court.*—Judgment reserved, and cause remanded with directions to grant a new trial, costs below to abide the event. Appellant to have costs on this appeal.